**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

AMIR MUHAMMAD, )
)
Plaintiff, )   No. 4:18-CV-1757 RLW
)
v. )
)
CITY OF ST. LOUIS, )
)
)
Defendant. )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant City of St. Louis' ("Defendant") Partial Motion to Dismiss First Amended Complaint (ECF No. 20). This matter is fully briefed and ready for disposition.

## BACKGROUND[1]

Plaintiff Amir Muhammad ("Muhammad") is a former employee of the City of St. Louis's Department of Public Safety, Police Division. Muhammad was employed as a police officer until his retirement. In his First Amended Complaint, Muhammad alleges he was subjected to discrimination because of his race (black) and his religion (Muslim) during his employment as a police officer.

---

[1] In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant. *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

On April 27, 2019, Muhammad dually-filed his charge of discrimination with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 16, ¶9). On May 31, 2018 the EEOC sent Muhammad a right to sue letter. (ECF No. 16-1). On June 19, 2018, the MCHR sent Muhammad a letter stating he had no right to sue on any allegations that occurred prior to October 29, 2016 because he did not timely file his complaint. (ECF No. 16-2). The MCHR advised, however, Muhammad had a right to sue for allegations occurring after October 29, 2016. (ECF No. 16-2).

Muhammad filed this lawsuit in state court on August 28, 2018. (ECF No. 2). Defendant removed this case to federal court on October 15, 2018. (ECF No. 1). On November 6, 2018, Muhammad filed his First Amended Complaint ("FAC"; ECF No. 16). Muhammad's FAC consists of six counts under the Missouri Human Rights Act ("MHRA"), six counts under Title VII of the Civil Rights Act, 42 U.S.C. §2000e, *et seq.* ("Title VII"), one count for race discrimination under 42 U.S.C. §1981 (Count XIII), and a final count challenging the constitutionality of the recently-enacted changes to the MHRA. Defendant asks this Court to dismiss Counts II, IV, V, VI, X, XI, and XII in their entirety for failing to state a claim upon which relief can be granted and Count I-XII to the extend that the allegations are untimely.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp., v. Twombly*, 550 U.S 544, 570 (2007). A "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556).

## DISCUSSION

### I.    Counts I-VI under MHRA

In Counts I-VI of the Petition for Damages, Muhammad alleges race and religious discrimination (including claims for hostile work environment) under the MHRA.

An aggrieved party must file an administrative charge of discrimination within 180 days of an alleged unlawful employment practice under the MHRA. *Holland v. Sam's Club,* 487 F.3d 641, 643 (8th Cir.2007); *Gillespie v. Charter Commc'ns*, 31 F. Supp. 3d 1030, 1033 (E.D. Mo. 2014). Failure to do so will result in dismissal of the allegations related to the charge. *See Holland,* 487 F.3d at 644. Application of the MHRA's 180–day statute of limitations is subject to equitable exceptions, including the continuing violation doctrine. *Rowe v. Hussmann Corp.,* 381 F.3d 775, 782 (8th Cir.2004) (citing *Pollock v. Wetterau Food Distrib. Grp.,* 11 S.W.3d 754, 763 (Mo.Ct.App.1999)). When an employer is accused of a continuing violation, the plaintiff "must first demonstrate that at least one act occurred within the filing period and, second, must show that the harassment is a series of interrelated events, rather than isolated or sporadic acts of discrimination." *Id.* (internal citation omitted).

As previously discussed, Muhammad filed his Charge with the MCHR on April 27, 2017. Defendant argues that Muhammad's allegations in Counts I-VI that precede October 29, 2016 are time-barred.

In response, Muhammad contends that events preceding October 29, 2016 are not time-barred based upon the continuing violation doctrine. To take advantage of the continuing violation

doctrine, a plaintiff must satisfy a two-part test: (i) demonstrate that at least one act occurred within the filing period; and (ii) show that the current claim of discrimination is part of a series of interrelated events, rather than isolated or sporadic acts of intentional discrimination. *Tisch v. DST Sys., Inc.*, 368 S.W.3d 245, 252 (Mo. Ct. App. 2012) (citing *Pollock v. Wetterau Food Distribution Group*, 11 S.W.3d 754, 763 (Mo.App. E.D.1999)). If the plaintiff proves both, then "the 180–day filing period becomes irrelevant ... [and][h]e may then offer evidence of the entire continuing violation." *Id.*

Continuing violations consist of repeated conduct extending over a period of time. *Tisch v. DST Sys., Inc.*, 368 S.W.3d 245, 254 (Mo. Ct. App. 2012) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 S. Ct. 2061, 2073, 153 L. Ed. 2d 106 (2002). "One example is a hostile work environment claim." *Tisch*, 368 S.W.3d at 254. "A continuing violation is established when the plaintiff shows 'a series of closely-related, similar events that occurred within the same general time period and stemmed from the same source" that "continued into the limitations period.'" *Tisch*, 368 S.W.3d at 254 (citing *Pollock v. Wetterau Food Distribution Group,* 11 S.W.3d 754, 763 (Mo. Ct. App. 1999) ("As in most claims of hostile work environment harassment, the discriminatory acts were not always of a nature that could be identified individually as significant events; instead, the day-to-day harassment was primarily significant, both as a legal and as a practical matter, in its cumulative effect." (internal quotation omitted)); *see also Plengemeier v. Thermadyne Indus., Inc.*, 409 S.W.3d 395, 401 (Mo. Ct. App. 2013) ("Under the continuing violation theory, a victim of discrimination may pursue a claim for an act occurring prior to the statutory period, if she can demonstrate the act is part of an ongoing practice or pattern of discrimination by her employer."). The Court holds, at this stage of the litigation, that Muhammad has sufficiently pleaded his causes of actions under the MHRA as continuing

violations that are not time-barred. Specifically, several incidents provide cumulative support for Muhammad's continuing violation claim under the MHRA, even though they occurred before October 29, 2016:

- When Muhammad was transferred to District 5, his supervisors expressed "concerns" about Muhammad's religion (Muslim) (ECF No. 16, ¶¶15-17);

- A sergeant refused to use Muhammad's new name in March 2016 (ECF No. 16, ¶¶18-20);

- In March 2016, a superior officer discriminated against a black suspect by framing him and causing other subordinates to write a false report (ECF No. 16, ¶¶31-34); Muhammad reported this incident (ECF No. 16, ¶¶34-35);

- In April 2016, Muhammad had a conflict with a white female officer, who previously spat at another black officer and made an inappropriate comment about a black suspect (ECF No. 16, ¶¶36-40);

- On or around July 16, 2016, Muhammad was advised by Sgt. James Clark that Lt. Applegate was "not pleased" with Muhammad, despite Muhammad having not been disciplined in his 18 years of service (ECF No. 16, ¶¶44-45);

- In September 2016, Muhammad's requests for time off were denied, despite being within the force's policy (ECF No. 16, ¶46);

- In 2016 and 2017, Muhammad's requests for other officers to ride with him were denied, leaving him in danger (ECF No. 16, ¶47);

- In September 2016, Muhammad was harassed by white officers for not wearing a "mourning patch" after the shooting of Blake Snyder; white police officers accused

Muhammad of acting like "Colin Kaepernick" by not supporting his fellow officers (ECF No. 16, ¶¶48-52);[2]

- On December 1, 2016, Muhammad received a 1-day suspension for violating a "pursuit policy" on March 23, 2016, even though Muhammad was not the driver of the vehicle involved in the pursuit (ECF No. 16, ¶¶56-57);

- A black coworker and fellow officer received a note in his locker stating: "You black ass NIGGER. We want you out of our station. We want your black ass DEAD. Fuck your medals. If an AID call comes out for you we won't respond. KILL YOURSELF NIGGER OR WE WILL." It was signed by "South Patrol." While the note was not directed specifically towards Muhammad, he was made aware of it and feared for his safety based upon the note (ECF No. 16, ¶¶58-60);

- Other officers used the "n" word at work, specifically but not limited to Officer Skalzo, a white man (ECF No. 16, ¶62).

At this early stage, the Court holds that Muhammad has alleged a series of closely-related, similar events that occurred within the same general time period and stemmed from the same general source and continued into the limitations period. That is, Muhammad alleges "a series of interrelated events, rather than isolated or sporadic acts of intentional discrimination" that occurred as part of his employment. *Plengemeier v. Thermadyne Indus., Inc.*, 409 S.W.3d 395, 401 (Mo. Ct. App. 2013). The Court finds that Muhammad has alleged that a series of racially- and religiously-charged statements and actions made by several police department

---

[2] San Francisco 49ers quarterback Colin Kaepernick refused to stand for the playing of the national anthem in protest of wrongdoings against African Americans and minorities in the United States. *See* http://www.nfl.com/news/story/0ap3000000691077/article/colin-kaepernick-explains-why-he-sat-during-national-anthem (last visited 9/11/19).

officials and employees that span from both prior to and after October 29, 2016. While some of these events individually are not particularly significant, the Court notes that the cumulative effect of these events is enough to plead a continuing violation. Therefore, the Court denies the motion to dismiss Count I-VI of the First Amended Complaint.

## II.     Count II

Defendant also argues that Count II for religious discrimination in violation of the MHRA fails to state a claim under Rule 12(b)(6). For a discrimination claim under the MHRA, a plaintiff must establish (1) plaintiff suffered an adverse employment action, (2) plaintiff's religion was a contributing factor in her adverse employment action, and (3) plaintiff suffered damage as a direct result of the adverse employment action. *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 820 (Mo. banc 2007) (citing Missouri Approved Instruction 31.24); *Sherrell v. Saint Francis Med. Ctr.*, 24 F. Supp. 3d 851, 864 (E.D. Mo. 2014).

Defendant asserts that Muhammad's "timely" factual allegations related to his religion are "wholly insufficient" to state a claim for religious discrimination. (ECF No. 21 at 6-7). Defendant asks the Court to disregard the incidents that allegedly occurred over 180 days before Muhammad filed his Charge. (ECF No. 21 at 7). At the motion to dismiss stage, however, the Court will consider the allegations prior to April 27, 2017 under the continuing violation doctrine. In turn and considering all the allegations in the First Amended Complaint, the Court holds that Muhammad sufficiently alleges a claim for religious discrimination.

## III.     Counts VII-XII under Title VII

In Counts VII-XII of the First Amended Complaint, Muhammad alleges race and religious discrimination (including claims for hostile work environment) under the Title VII. Title VII of the Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C. § 2000e *et seq.*, was enacted to

prohibit discrimination by employers on the basis of race, color, religion, sex or national origin. The Supreme Court clarified that the continuing violation doctrine is not available to toll the limitations or revive a claim involving a separate act of discrimination that occurred beyond the 300–day limitation. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113-14 (2002); *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 670 (8th Cir. 2006). "[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id.* at 112, 122 S.Ct. 2061. Prior acts may be used as background evidence in support of a timely claim. *Id.* at 113, 122 S.Ct. 2061.

Defendant argues that any allegations that occurred prior to July 1, 2016 are untimely because Muhammad did not file his Charge with the EEOC until April 27, 2017. *See* 42 U.S.C. §2000e-5(e)(1) (allegations occurring more than 300 days prior to the filing of the charge of discrimination with the EEOC are not actionable).[3]

As previously discussed with respect to his MHRA claims, the Court holds Muhammad sufficiently alleges a continuing violation. Muhammad has demonstrated that these acts were

---

[3] 42 U.S.C. § 2000e-5 ("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.").

part of an ongoing and cumulative discriminatory series of events that state a claim under a continuing violation theory under Title VII.

### IV.    Hostile Work Environment Based upon Religion

"To establish a hostile work environment claim, the plaintiff must establish that: (1) he is a member of a protected class; (2) he was exposed to unwelcome harassment; (3) the harassment was based on a protected characteristic of the plaintiff; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassing behavior, but failed to take proper action to alleviate it." *Arraleh v. Cty. of Ramsey*, 461 F.3d 967, 978 (8th Cir. 2006) (citing *Al–Zubaidy v. TEK Indus., Inc.,* 406 F.3d 1030, 1038 (8th Cir. 2005)). In a hostile work environment case, the question is "whether a reasonable person would objectively consider [the] behavior ... severe enough to alter the conditions of her employment and create an abusive working environment." *Cooper v. Albacore Holdings, Inc.,* 204 S.W.3d 238, 245 (Mo. Ct. App. 2006). In order to meet this standard, "[t]he conduct must be sufficient to create a hostile work environment, both as it was subjectively viewed by the plaintiff and as it would be objectively viewed by a reasonable person." *Id.* at 244–45; *Diaz v. Autozoners, LLC*, 484 S.W.3d 64, 84 (Mo. Ct. App. 2015).

In Counts V and XI, Muhammad alleges he experienced a hostile work environment because of his religion on violation of the MHRA and Title VII. Defendant asserts that Muhammad's allegations fall short of the severe and pervasive conduct necessary to state a hostile work environment claim and Counts V and XI should be dismissed. (ECF No. 21 at 12).

Muhammad asserts that he was harassed for changing his name to Amir Muhammad and a supervisor refused to call him by his name. (ECF No. 31 at 6). Muhammad claims he was

threatened with discipline that was unfounded. (*Id.*). Finally, he maintains he was asked questions about his religion in a harassing manner as recently as June 2018. (*Id.*).

The Court holds that Muhammad's allegations are insufficient as a matter of law to state a claim for hostile work environment based upon religion. Muhammad has alleged a few minor incidents, none of which are severe enough to state a claim for hostile environment based upon religion.

## V. Hostile Work Environment Based upon Race

Defendant argues that Muhammad fails to state a claim for hostile work environment based upon race. First, Defendant asserts that allegations of harassment that happened to other people cannot buttress Muhammad's claims for hostile work environment based upon race. Defendant maintains that alleged incidents that occurred to other people—framing a black man for a gun crime, using excessive force on a black suspect, making a comment to a black suspect, and receiving a racist note—cannot support Muhammad's claim of a hostile work environment based upon race.

In response, Muhammad argues that the overall racist culture of the City of St. Louis Police Department, including the hostile actions taken towards black officers and citizens, provides support for Muhammad's claim of a hostile work environment. Muhammad argues that his workplace "was permeated with discriminatory intimidation, ridicule and insult." (ECF No. 31 at 7). Muhammad maintains he suffered not from merely occasional teasing, but from severe and pervasive behavior that put black officers, including Muhammad, at risk. (ECF No. 31 at 7-8). Muhammad notes instances where black citizens and officers were treated worse than their white counterparts, to the point of excessive force. Muhammad also identifies instances where black officers were denied back-up and partners based upon their race.

Based solely upon his allegations in his First Amended Complaint, the Court holds that Muhammad states claims for hostile work environment based upon race. Here, Muhammad describes an environment with pervasive racial epithets and derogatory comments. *See, e.g.,* ECF No. 16, ¶¶62-63, 68, 75. These allegations of constant harassment are alone enough to state a claim for hostile work environment. *See Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1257 (8th Cir. 1981) ("Unquestionably, a working environment dominated by racial slurs constitutes a violation of Title VII."). In addition, Muhammad alleges he was denied backup (ECF No. 16, ¶36), and other black officers were threatened that they would not respond to aid calls for black officers (ECF No. 16, ¶59). Muhammad further alleges that he told supervisors about the racial discrimination and improper treatment, but nothing was done in response. *See Arraleh v. Cty. of Ramsey*, 461 F.3d 967, 979 (8th Cir. 2006) (quoting *Diaz v. Swift–Eckrich, Inc.*, 318 F.3d 796, 801 (8th Cir.2003) ("Even if the plaintiff can establish that the harassment is 'severe and pervasive,' the plaintiff must then present evidence that the employer 'knew or should have known about the harassment and failed to respond in a prompt and effective manner.'"). Thus, at this early stage of litigation, the Court holds that Muhammad sufficiently alleges causes of action for hostile work environment based upon race.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of St. Louis' ("Defendant") Partial Motion to Dismiss First Amended Complaint (ECF No. 20) is **DENIED,** in part, **and GRANTED,** in part. Plaintiff Amir Muhammad's claims in Counts V and XI for Hostile Work Environment based upon Religion are **DISMISSED** for failure to state a claim. Defendant City of St. Louis' Partial Motion to Dismiss First Amended Complaint is denied in all other respects.

Dated this 20th day of September, 2019.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**