UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMIR MUHAMMAD, | ) |
| Plaintiff, | ) No. 4:18-CV-1757 RLW |
| v. | ) |
| CITY OF ST. LOUIS, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's Motion for Summary Judgment (ECF No. 48). This matter is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Amir Muhammad ("Muhammad" or "Plaintiff") was employed by the City of St. Louis ("City" or "Defendant") as a Police Officer from August 6, 1999 until November 7, 2018. (Defendant's Statement of Uncontroverted Material Facts in Support of Its Motion for Summary Judgment ("DSUMF"), ECF No. 50, ¶1). Muhammad is black and his religion is Muslim. (DSUMF, ¶2).

In 2013, Officer Dwight Meeks received a note stating, "You black ass N*GGER. We want you out of our station. We want your black ass DEAD. F*ck your medals. If an AID call comes out for you we won't respond. KILL YOURSELF N*GGER OR WE WILL. Respectfully, South Patrol." No one was ever disciplined for the note to Meeks. (DSUMF, ¶111). Police Officer Bernard Jordan and Lt. Will Brown investigated the incident but were not able to identify the perpetrator. (DSUMF, ¶113). Plaintiff did not know Officer Meeks in the summer of 2013, nor did Plaintiff work at the same station where the note was discovered. (DSUMF, ¶¶115-16).

On February 23, 2015, Plaintiff transferred from District 6 to District 5.  (DSUMF, ¶¶48-49).  In May 2015, Plaintiff changed his name from Sanford Willis to Amir Muhammad.  (DSUMF, ¶52).  Plaintiff alleges that Officer Bonenberger stated to Plaintiff, "I don't know why you did that," regarding Plaintiff's name change.  (DSUMF, ¶54).  Plaintiff did not report Officer Bonenberger's statement to IAD, Police Human Resources ("HR"), or the Department of Personnel.  (DSUMF, ¶55).  Other than the alleged comment by Officer Bonenberger no one ever made another comment to Plaintiff regarding his name change or any other comment that Plaintiff found offensive regarding his religion.  (DSUMF, ¶¶56-57).

On March 23, 2016, Muhammad was involved in a high-speed pursuit of a first-degree murder suspect.  (DSUMF, ¶4).  As a result of the high-speed chase, there were two Internal Affairs Division ("IAD") Investigations: 16/156 and 16/039.  (DSUMF, ¶5).

**1)   Internal Affairs Division Investigation 16/156**

IAD Investigation 16/156 related to the high-speed chase on March 23, 2016.  (DSUMF, ¶6).  Muhammad and his partner, Officer Stevens, joined the pursuit with multiple other police vehicles.  (DSUMF, ¶15).  The simultaneous pursuit of a suspect by many police vehicles is knowns as a "caravan formation" and is prohibited by Police Division Special Order 5-.05, Section 2, Subsection C3.  (DSUMF, ¶16).  During the pursuit, the suspect's vehicle struck one of the police vehicles, and the police vehicles nearly struck each other multiple times.  (DSUMF, ¶18).  The 16/156 Administrative Reports Transmittal Sheet ("ARTS") recommended that all the officers who were involved in the pursuit be subjected to disciplinary action.  (DSUMF, ¶21).  The officers who participated in the pursuit were disciplined for "a lack of judgment and concern for safety of the public."  (DSUMF, ¶25).

On November 10, 2016, Muhammad accepted his recommended discipline in connection with IAD No. 16/156, waived his right to a hearing before the Summary Hearing Board and waived his right to appeal to the Civil Service Commission. (DSUMF, ¶30). The only disciplinary action that Plaintiff received in his over two-decade career with the Defendant's Police Department was a one-day suspension. (DSUMF, ¶3).

### 2)  Internal Affairs Division Investigation 16/039

IAD Investigation 16/039 involved an allegation that Police Officer Haire assaulted Police Officer Meeks after the March 23, 2016 pursuit. (DSUMF, ¶7).  The memorandum does not state that Plaintiff personally observed any police officer use excessive force on the suspect or personally observed Officer Haire push Officer Meeks.  Allegation A, that Officer Haire struck Officer Meeks three times on the right leg with his elbow during the arrest of a Homicide suspect, was not sustained. (DSUMF, ¶44).  Allegation B, that Officer Haire used excessive force on the suspect, was not sustained. (DSUMF, ¶45).  Allegation C, that both Officer Haire and Officer Meeks quarreled, was sustained. (DSUMF, ¶46).  On October 7, 2016, the investigation was finalized, and the investigator recommended both Officer Haire and Officer Meeks receive written reprimands for quarreling. (DSUMF, ¶47).

### 3)  Plaintiff's Grievances/Complaints

On September 12, 2016, Plaintiff filed a grievance with the Department of Personnel, alleging religious discrimination. (DSUMF, ¶126). On October 18, 2016, Plaintiff filed a second grievance with the Police Commissioner/Chief's Office, alleging there was "a collaborative effort by white officers and supervisors to isolate, harass and discriminate against" Plaintiff. (DSUMF, ¶¶127-28).  On October 3, 2016, Plaintiff filed a grievance with the Department of Personnel, alleging he was denied time off work and that he was denied opportunities to ride with black

officers when white officers were not denied similar opportunities. (DSUMF, ¶130). On May 19, 2017, the Department of Personnel concluded that it had fully investigated Plaintiff's EEO Complaint and found no evidence of discrimination under the City's policies. (DSUMF, ¶131).

On April 27, 2017, Plaintiff filed a Charge of Discrimination ("Charge") with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC"), checking boxes alleging he was being discriminated against based upon race and religion and that he was being retaliated against. (DSUMF, ¶133). Plaintiff's First Amended Complaint ("FAC", ECF No. 16) asserts claims under the Missouri Human Rights Act ("MHRA") (Counts I-VI), Title VII, 42 U.S.C. §2000e (Counts VII-XII), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981 (Count XIII). This action was removed on October 15, 2018 based upon federal question jurisdiction, 28 U.S.C. §1331, because Plaintiff alleges causes of action under Title VII of the Civil Right Act. On September 20, 2019, this Court entered its Order dismissing Counts V and XI for Hostile Work Environment based upon religion. (ECF No. 45).

## DISCUSSION

### I. MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly

preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

### B. Inadmissible Hearsay/Unsupported Statements

As an initial matter, the Court addresses Plaintiff's reliance on some inadmissible hearsay and unsupported statements to try to dispute Defendant's statement of facts. The Court "must take as true those facts asserted by [the] plaintiff that are properly supported in the record." *Taluka v. Serrell,* 244 F.3d 628, 632 (8th Cir.2001); *see also Behrens,* 516 U.S. at 309, 116 S.Ct. 834 ("On summary judgment ... the plaintiff can no longer rest on the pleadings and the court looks to the evidence before it (in the light most favorable to the plaintiff"); *Mays v. Rhodes*, 255 F.3d 644, 647 (8th Cir. 2001).

Plaintiff attempts to dispute Defendant's Statement of Facts in Support of its Motion for Summary Judgment by citing to several instances of inadmissible hearsay. *See* Plaintiff's Response to Defendant's Statement of Material Facts ("Response"), ECF No. 61. For example, in Response 58, Plaintiff states that "another employee told Plaintiff" his opinion that Sgt. Michael Scego was refusing to use Plaintiff's religious name.[1] In Response 59, Plaintiff states that someone told Plaintiff that he or she heard Sgt. Scego use a racial slur. In Response 60, Plaintiff "heard from [unnamed] citizens that Scego would plant evidence on suspects." In Response 108, Plaintiff states he overheard officers refer to black citizens as "shit heads" and "shit birds" and saw a note with the word "n*gger" written on it. In Response 122, Plaintiff states he heard from others that Sgt. Sisco said he was "sick and tired of riding with n*ggers." "When an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment." *Brooks v. Tri-Sys., Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) (citing *Pink Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313, 1319 (8th Cir. 1986)). Plaintiff provides no statements from anyone who directly heard such allegedly discriminatory comments, nor did Plaintiff hear said comments. The statements relied upon by the Plaintiff are not admissible and cannot be used to defeat Defendant's Motion for Summary Judgment.

Likewise, the facts identified by Plaintiff do not support the conclusions reached in his arguments in opposition to Summary Judgment. First, Plaintiff relies upon a racist note received by Officer Meeks in 2013. No officer was disciplined for the note because the author was never identified, despite an internal investigation yielding a 32-page report. Plaintiff takes umbrage with

---

[1] Plaintiff, however, also claims that he testified that Sgt. Scego refused to use his new name during roll call. (Response, ¶58). This issue is addressed later, but alone is an insufficient basis for a religious discrimination claim.

Defendant's failure to send out a department-wide warning regarding the racist letter but does not identify how that action or inaction supports Plaintiff's claims. The Court notes that Internal Affairs Division (IAD) investigations are confidential and it is not the Department's custom to send out department-wide updates about ongoing investigations. (ECF No. 68 at 4). In addition, the racist letter was directed to Meeks alone, so it is unclear what warning would have been given to other officers. (*Id.*)

Many of Plaintiff's other contentions are also not supported by the evidence. No admissible evidence supports Plaintiff's claim that any employee was subjected to racial slurs in the workplace. Plaintiff does not dispute or does not properly dispute that he was subjected to racial slurs in his workplace. *See* DSUMF, ¶59 ("Sergeant Michael Scego has never used a racial slur in the workplace.")[2]; ¶62 ("Plaintiff never reported to IAD, Police HR, or the Department of Personnel that he claimed Sgt. Scego was planting evidence or using racial slurs."); ¶76 ("Plaintiff never observed Officer Pitterle … use any racial slurs."); ¶117 ("Plaintiff has never heard anyone use 'the n-word,' a racial slur, at work."); ¶122 ("Sgt. Michael Sisco never said he was 'sick and tired of riding with n*ggers.'").[3] Thus, Plaintiff's responses to Defendant's Statement of Uncontroverted Material Facts fail to create an issue of fact that he was exposed to discriminatory statements.

### C. Race Discrimination in Violation of the MHRA and Title VII the Civil Rights Act (Count I, VII)

"A prima facie case of discrimination [under Title VII] requires that the plaintiff '(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) suffered under circumstances permitting an

---

[2] Plaintiff attempts to dispute this but does do so with admissible evidence.
[3] Again, Plaintiff failed to dispute this fact with any admissible evidence.

inference of discrimination'" *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 903 (8th Cir. 2015)(quoting *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012)). Title VII discrimination claims typically utilize a burden-shifting analysis:

> Historically, how courts analyze Title VII discrimination claims has depended on whether a plaintiff has presented direct or indirect evidence of discrimination. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 269–70, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Under this dichotomy, if a plaintiff presents direct evidence of discrimination, then courts must proceed under the mixed-motive standard. *See Mohr v. Dustrol,* 306 F.3d 636, 639–40 (8th Cir. 2002). Once the plaintiff presents direct evidence that discrimination was a motivating factor in the employment decision, the burden shifts to the employer to prove that it would have reached the same decision in the absence of discrimination. *See Gagnon v. Sprint Corp.,* 284 F.3d 839, 847–48 (8th Cir. 2002).
>
> On the other hand, if a plaintiff presents indirect evidence of discrimination, then courts must proceed under the single-motive analysis articulated in *McDonnell Douglas. See id.* Under this standard, the plaintiff must first establish a prima facie case of discrimination. *See id.* Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a non-discriminatory reason for the employment action. *See id.* If the employer identifies such a reason, then the burden shifts back to the plaintiff to present sufficient evidence that the proffered reasons was really a pretext for intentional discrimination. *See id.* The burden of persuasion always remains with the plaintiff. *See id.*

*Klyuch v. Freightmasters, Inc.*, 393 F. Supp. 2d 788, 792–93 (D. Minn. 2005). Following the MHRA's 2017 amendment, effective August 28, 2017, "an employer violates the MHRA if the employee's protected status was the *motivating factor* in an adverse employment action." *Bram v. AT&T Mobility Servs., LLC*, 564 S.W.3d 787, 794 (Mo. Ct. App. 2018); *see* § 213.010(2), Mo. Rev. Stat. (2017). "This new standard is analogous to the one used in employment discrimination claims under federal law, and imposes a higher burden upon the employee than the prior

'contributing factor' standard." *Bram*, 564 S.W.3d at 794-95; *Jackson v. Gen. Motors, LLC*, No. 4:18-CV-1243 RLW, 2020 WL 3469334, at *25 (E.D. Mo. June 25, 2020).[4]

Plaintiff alleges that he is a black male who suffered adverse employment actions because of his race, "including but not limited to harassment, suspension, refusal of back up aid, and refusal to allow him to use leave benefits." (FAC, ¶131). Plaintiff asserts that his claims for race discrimination survive because (1) he and other officers were refused aid and backup, (2) because of the note Meeks received, (3) because other officers referred to criminals as "shit birds," (4) because officers "cheered when a black criminal was killed, (5) because white officers falsified reports and planted evidence on suspects, and (6) because Plaintiff was suspended and a white officer was not for similar conduct. Other than the suspension, none of these facts constitute adverse employment actions against Plaintiff. An adverse employment action is "a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013) (citing *Wilkie v. Dep't of Health and Human Servs.,* 638 F.3d 944, 955 (8th Cir.2011)). "Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, are not adverse employment actions." *Martin v. Champion Ford, Inc.*, 41 F. Supp. 3d 747, 761 (N.D. Iowa 2014) (citing *Jackman*, 728 F.3d at 804).

The only disciplinary action that Plaintiff received in his over two-decade career with the Defendant's Police Department was a one-day suspension. (DSUMF, ¶3). As previously stated,

---

[4] Because the Missouri and federal standards for discrimination and retaliation are now analogous, the Court will primarily address Plaintiff's claims under federal law, which is applicable to his MHRA claims as well.

Plaintiff accepted his recommended discipline, waived his right to a hearing before the Summary Hearing Board and waived his right to appeal to the Civil Service Commission. (DSUMF, ¶30). In addition, Plaintiff cannot demonstrate that that white officers were treated differently regarding disciplinary action for the police pursuit. Plaintiff contends that he was treated differently than Officer Cohen because Plaintiff was not driving, but Cohen was. Plaintiff asserts that Officer Cohen "bragged" about not being disciplined for the police pursuit. However, Officer Cohen's alleged statements are inadmissible hearsay. *See* Section B, *Supra*. Instead, the undisputed evidence shows that Officer Cohen did not see the pursuit. (Ex. H. ECF No. 50-15). In contrast, Plaintiff directly participated in the improper pursuit. (Ex. E, ECF No. 50-9). Plaintiff, however, has presented no admissible evidence that Officer Cohen violated Department policy, unlike Plaintiff.

Although Plaintiff attempts to argue that he was the victim of other discriminatory treatment, none of those are actionable under Title VII. As outlined by another district court, occasionally a "[a] series of retaliatory conduct falling short of discharge or termination can constitute an adverse employment action." *Casey v. Riedel*, 195 F. Supp. 2d 1122, 1130–31 (S.D. Iowa 2002) (citing *McGregory v. Crest/Hughes Tech.,* 149 F.Supp.2d 1079, 1091–92 (S.D.Iowa 2001)); *see Coffman v. Tracker Marine, L.P.,* 141 F.3d 1241, 1245–46 (8th Cir.1998) (holding that when taken together, employer's actions showed employment was adversely affected in material way, when employer began to communicate with employee more by electronic mail and worked with her less on one-to-one basis, which hampered employee's ability to do her job, and employer excluded employee from some management meetings that she would have been expected to attend, and denied employee vacation time; stating court looks at combined effect of employer's actions to determine if discrimination occurred). A series of retaliatory conduct constituting adverse

employment action may include reduction of duties, disciplinary action, negative personnel reports, and "papering" a file to support the employer's ultimate recommendation of termination. *McGregory,* 149 F.Supp.2d at 1091–92 (holding plaintiff had provided evidence that defendants subjected him to series of retaliatory conduct including disciplinary action, negative personnel reports, "papering" his file, race-based humiliating names in the presence of co-workers, and demotion that, even though not triggering a salary reduction, meant a substantial reduction in duties and lacked supervisory status).

Indeed, even allowing for such cumulative evidence, Plaintiff cannot identify any instances that rise to the level of an adverse employment action. *See Casey v. Riedel*, 195 F. Supp. 2d 1122, 1131 (S.D. Iowa 2002) (citing *Gagnon,* 284 F.3d 839, 850–51)("ostracism and rudeness, however, do not rise to the level of an adverse employment action, unless evidence indicates the behavior had an impact on the employee's job title, salary, benefits, or any other material aspect of employment"). Plaintiff cannot dispute that he was never harassed by anyone in the workplace. (DSUMF, ¶¶107, 108). Plaintiff could point to only one alleged instance in 20 years where Plaintiff did not receive requested assistance (aid or backup), and no harm to Plaintiff resulted. (DSUMF, ¶¶77-78). In 20 years of service, Plaintiff could identify only one instance when his request for officers to ride with him were denied. (DSUMF, ¶94). Plaintiff cannot demonstrate how he was harmed as a result of riding alone. (DSUMF, ¶96). Plaintiff cannot show any of these instances caused him to suffer any material disadvantage and was not negatively affected in terms of his compensation, terms, conditions, or privileges of employment.

In sum, the Court holds as a matter of law that only his one-day suspension can constitute an adverse employment action. However, Plaintiff's suspension is insufficient to support a cause of action for race discrimination because the suspension was justified and not discriminatory as a

matter of law.  The Court grants Defendant's Motion for Summary Judgment with respect to Plaintiff's race discrimination claims.

### D. Religious Discrimination in Violation of MHRA and Title VII of the Civil Rights Act (Count II, VIII)

Plaintiff alleges that he is a Muslim male who suffered adverse employment action because of his religion, "including but not limited to harassment, suspension, refusal of back up aid, and refusal to allow him to use leave benefits." (FAC, ¶138).  Plaintiff alleges that his religion was a "motivating factor" in Defendant's adverse employment actions towards Plaintiff including "Plaintiff was disciplined for reasons non-Muslim employees were not disciplined for and Plaintiff was subjected daily to a religiously hostile environment, including the refusal of his superior to use his proper name and his supervisor not wanting him in his group due to his religion." (FAC, ¶139).

Without any support, Plaintiff claims that his suspension was related to his religion.  All of the facts identified by Plaintiff related to his religion, however, occurred after his suspension or around the time of his transfer to the Fifth District in February 2015.  Plaintiff maintains Lt. Applegate, Sgt. Clark, Officer Bonenberger, and officers in the Fifth District had displayed religious animosity towards him.  (Plaintiff's Response to Defendant's Statement of Facts, ECF No. 61, ¶¶50-58).  Plaintiff asserts Officer Bonenberger made a single, disrespectful comment about Plaintiff's religion in 2015.  A single comment is insufficient as a matter of law for a hostile work environment claim. *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (internal citation and quotations omitted) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment"); *Brannum v. Missouri Dep't of Corr.*, 518 F.3d 542, 548-49 (8th Cir. 2008) ("[t]he single, relatively tame comment at issue here is insufficient as a matter of law to support

an objectively reasonable belief it amounted to unlawful sexual harassment"). Further, the evidence before the Court indicates that the individuals identified by Plaintiff as those that discriminated against him were not those responsible for Plaintiff's suspension. Rather, the decision to suspend Plaintiff was made by Major Kenneth Kegel in August 2016 and was approved by Lt. Col. Edward Kunts, Lt. Col. Lawrence O'Toole, Lt. Col. Jerry Leyshock, and Commissioner Sam Dotson. (Ex. D, ECF No. 50-7). The Court holds that Plaintiff's belief that his suspension was motivated by religion is unsupported by the record and insufficient to support his claim as a matter of law.

### E. Violation of MHRA and Title VII of the Civil Rights Act for Retaliation (Count III, IX)

To establish a prima facie case of retaliation, Plaintiff must demonstrate that he engaged in statutorily protected activity, he suffered an adverse employment action, and a causal connection exists between the two. *Gilbert v. Des Moines Area Community College,* 495 F.3d 906, 917 (8th Cir.2007). To establish causation, Plaintiff must prove "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 361 (2013). "In the retaliation context, a materially adverse employment action is one that might have persuaded a reasonable worker from making or supporting a charge of discrimination." *Jackman,* 728 F.3d at 804–05 (internal quotation marks and citation omitted).

Plaintiff contends he opposed racial and religious discrimination and harassment "when he complained to his supervisors about the discriminatory treatment he was experiencing from Defendant" (FAC, ¶143), complained to his supervisors and internal affairs about the discriminatory treatment he felt the public was experiencing at the hands of the department (FAC,

¶144), filed the September 2016 EEO complaint to human resources (FAC, ¶145), and complained to his supervisors, internal affairs, and HR (FAC, ¶146). Plaintiff alleges "Defendant[] took adverse employment action against him when it suspended him, refused him days off, and refused him backup." (FAC, ¶148).

Plaintiff filed his first grievance on September 12, 2016 and Commissioner Dotson was notified of this grievance on September 16, 2016. (DSUMF, ¶126). Plaintiff contends he complained to the City regarding discrimination sometime in October 2016. (FAC, P65). However, Major Kegel's recommendation that Plaintiff be disciplined for the police pursuit occurred on August 16, 2016, a month before Plaintiff filed his grievance. (DSUMF, ¶21). Lt. Col. Kunt recommended that Plaintiff be suspended on September 29, 2016. (DSUMF, ¶ 23). Commissioner Dotson concurred with these recommendations on October 17, 2016. (DSUMF, ¶24). Plaintiff admitted that Commissioner Dotson did not retaliate against him. (DSUMF, ¶¶126, 164).

Moreover, the undisputed facts do not support a finding of retaliation. The investigation of the police pursuit and discipline had been recommended more than a month before Plaintiff filed his grievance. Therefore, the decision to discipline Plaintiff could not have been retaliatory. In addition, Col Kuntz made the recommendation to suspend Plaintiff, but Plaintiff has presented no evidence that Col. Kuntz knew that Plaintiff had filed a grievance nor had Plaintiff complained of discrimination to Col. Kuntz. Moreover, the Court notes that Plaintiff was suspended for a clear violation of a Department policy. (DSUMF, ¶29). Many of the officers involved in the police pursuit received more harsh disciplinary actions than Plaintiff. (DSUMF, ¶¶26, 27, 28). For his part, Plaintiff never appealed his discipline and accepted his punishment. (DSUMF, ¶30).

Based upon the totality of these circumstances, the Court holds that Plaintiff's one-day suspension was not retaliatory as a matter of law.

### F. Violation of MHRA Title VII of the Civil Rights Act for Hostile Work Environment—Race (Count IV, X) and Retaliation (Count VI, XII)[5]

In support of Count X, Plaintiff alleges he "was subjected to unwelcome racial harassment during his employment for the City of St. Louis, including but not limited to racial slurs, racist notes, refusal of backup and aid; being call[ed] Colin Kaepernick, and watching black suspects be framed." (FAC, ¶154). In support of Count XII, Plaintiff claims he was "subjected to unwelcome harassment during his employment for the City of St. Louis, including but not limited to religious slur, racial slurs, refusal of backup and aid, suspension, … and refusal of employment benefits." (FAC, ¶172). Plaintiff claims he was harassed because "he complained of discrimination and in retaliation for his complaints." (FAC, ¶174).

To establish a hostile work environment claim under Title VII, Plaintiff must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) a causal nexus exists between the harassment and his group membership; and (4) the harassment affected a term, condition, or privilege of his employment. *Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046, 1058 (8th Cir. 2007) (citing *Gordon v. Shafer Contracting Co.,* 469 F.3d 1191, 1194–95 (8th Cir. 2006)). To show that the harassment affected a term, condition, or privilege of his employment, Plaintiff must offer facts that show the harassment to have been "sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive working environment' as viewed objectively by a reasonable person." *Carpenter v. Con–Way Cent.*

---

[5] Count XI for Hostile Work Environment-Religion was dismissed by order of the Court.  *See* ECF No. 45.

*Express, Inc.,* 481 F.3d 611, 618 (8th Cir.2007) (*quoting Tademe v. Saint Cloud State Univ.,* 328 F.3d 982, 991 (8th Cir.2003)); *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 809 (8th Cir. 2008).

As to his race hostile work environment claim, Plaintiff has identified no instances where he was personally subjected to an incident of harassment based upon race. Rather, Plaintiff merely references the note Officer Meeks received. Plaintiff claims that others within the department were mistreated, but identified no time another officer mistreated Plaintiff. Plaintiff asserts he "knew" that other officers used racial slurs at work, but Plaintiff cannot dispute that he never personally heard a racial slur used at work. (DSUMF, ¶117). Indeed, Plaintiff cites to no admissible evidence that any officer used racial slurs in the workplace. Plaintiff offers no admissible facts to support his claim that white officers refused to ride with black officers. Plaintiff does not assert that he ever saw any offensive social media posts directed at him. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009) (the court "cannot treat all incidents of harassment of African–Americans as contributing to a hostile work environment; rather, only harassment that was directed toward Plaintiffs themselves or toward others who associated with or advocated on behalf of African–American employees is relevant to our analysis, and only to the extent that Plaintiffs were aware of it"). In sum, Plaintiff fails to identify a single instance where he was subjected to unwelcome, race-based harassment. Thus, the Court holds that the conditions identified by Plaintiff are not sufficiently severe or pervasive as to alter the conditions of his employment and his claim for race-based hostile work environment fails as a matter of law. *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 809 (8th Cir. 2008) (holding verbal harassment and increased scrutiny were insufficient for a race-based hostile work environment claim); *Nitsche v. CEO of Osage Valley Elec. Coop.,* 446 F.3d 841, 846 (8th Cir.2006) ("To be actionable, the conduct complained of must be *extreme in nature* and not merely rude or unpleasant."); *Barrett*,

556 F.3d at 518 (where plaintiff did not allege hearing a single remark that reflected discrimination directed towards her based on race, she did not offer sufficient evidence to establish a prima facie case of a hostile work environment).

Similarly, Plaintiff's claim for hostile work environment based upon retaliation fails as a matter of law. As previously discussed, Plaintiff has not demonstrated that he suffered an adverse employment action, other than his suspension, and his suspension occurred prior to any complaints. Thus, due to temporal proximity, Plaintiff's claim for hostile work environment based upon retaliation fails as a mater of law and the Court grants Defendant's Motion for Summary Judgment. *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 811 (8th Cir. 2008) (citing *Stewart v. Indep. Sch. Dist. No. 196,* 481 F.3d 1034, 1042 (8th Cir. 2007) ("We first note that Trice's conduct at the October 9, 2003 meeting preceded Appellants' EEOC complaints that led to this case, and, therefore, cannot constitute retaliation for those complaints."). Moreover, Plaintiff has not shown that he suffered any adverse employment action that was not justified due to Plaintiff's violation of police procedures and that was not imposed by a superior who was unaware of Plaintiff's complaints. *See* Section C, *supra*; *see also O'Brien*, 532 F.3d at 811 (citing *Clegg v. Ark. Dept. of Corr.,* 496 F.3d 922, 929 (8th Cir. 2007) ("Furthermore, the remaining allegations, viewed as a whole, do not satisfy the 'significant harm' standard imposed by the materially adverse element."). Therefore, Plaintiff has not shown a causal relationship between his complaints and the allegedly retaliatory conduct.

### G.  Violation of 42 U.S.C. §1981a. for Race and Retaliation (Count XIII)

Plaintiff entitled Count XIII as "Violation of 42 U.S.C. §1981A, Race and Retaliation." Count XIII fails as a matter of law because a plaintiff cannot bring a §1981 against a state entity. "A federal action to enforce rights under § 1981 against a state actor may only be brought pursuant

to § 1983." *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998); *see Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 735, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."); *Ridgell v. City of Pine Bluff*, 935 F.3d 633, 636 (8th Cir. 2019) (citations omitted); *Russell v. Hennepin County*, 420 F.3d 841, 846 (8th Cir. 2005) ("A municipality can act only through its employees, so a plaintiff seeking damages against a municipality under § 1983, for race discrimination that violated § 1981, must show that a municipal official or employee racially discriminated against him.").  In his opposition (ECF No. 60), Plaintiff does not dispute that Count XIII fails as a matter of law.  The Court grants summary judgment in favor of Defendant on Count XIII.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 48) is **GRANTED**, in part. Counts I, II, III, IX, VI VII, VIII, IX, X, XII, and XIII.  Counts V and XI were previously dismissed by this Court.  (ECF No. 45).

**IT IS FURTHER ORDERED** that Defendant's Motion for Sanctions (ECF No. 55) is **DENIED** as moot.

An appropriate Judgment is filed herewith.

Dated this 25th day of November, 2020.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**